**In re TOWNSEND–ROBERTSON LUMBER COMPANY.**

**James F. DOWDEN, Trustee, Plaintiff,**

v.

**RAY F. SHARP LUMBER COMPANY, Defendant.**

**Bankruptcy No. 89–10219, AP No. 91–1004.**

United States Bankruptcy Court, E.D. Arkansas, N.D.

June 30, 1992.

Sylvia Borchert, Little Rock, Ark., for trustee.

Jim Dowden, trustee.

Everett Gibson, Memphis, Tenn., for defendant.

MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came on for trial before the Court, on April 29, 1992. Sylvia Borchert appeared for the trustee and Everett Gibson appeared for the defendant Ray F. Sharp Lumber Company. This adversary proceeding was initiated by a complaint to compel turnover of property. The trustee requests that certain transfers be avoided pursuant to sections 547, 548, 549, 550 of the Bankruptcy Code. Defendant Ray F. Sharp Lumber Company ("Sharp") denies that any preferential transfers occurred, that he did not receive notice of the bankruptcy, and that he has a statutory lien on the property stored on his premises.

The debtor operated a wholesale lumber business. In February 1989, the principal of the debtor corporation ("Townsend–Robertson"), Cecil Robertson, died. Cecil Robertson's son, David Robertson, sought to wind up the affairs of his father, including liquidation of the financially troubled company, Townsend–Robertson Lumber Company. One of the larger debts of Townsend–Robertson was owed to Ray F. Sharp Lumber Company ("Sharp"). On February 14, 1989, Townsend–Robertson owed $36,765 to Sharp. However, there was a fairly large amount of lumber owned by the debtor stored at Sharp's place of business.

Sharp operates a custom kiln drying facility. It does not buy and sell lumber, but provides inspection, separation, and drying services. It stores lumber for short periods of time, but, in general, will charge a fee (calculated retroactively) if lumber is left on the premises for an excessive length of time. Storage fees are generally not charged to customers who do a large volume of business with Sharp and who turn over inventory rapidly.

Sharp's course of dealing with Townsend–Robertson, however, varied somewhat from its normal practice. Because of the long-standing friendship between Ray Sharp and Cecil Robertson, Sharp stored lumber on its premises for Townsend–Robertson free of charge. Indeed, Sharp testified that some of the lumber which is the subject of this suit had been stored at Sharp since 1984. In this manner, Townsend stored much of its inventory of lumber on Sharp's premises. Townsend would purchase lumber and ship it to Sharp. Sharp would treat the lumber and ship the lumber to the ultimate buyer upon instructions from Townsend–Robertson. At the time of Cecil Robertson's death in February 1989, Sharp had possession of 231,817 feet of lumber owned by the debtor.[1]

David Robertson and Ray Sharp agreed, in February 1989, that Sharp would take title to some of the lumber stored at the business in satisfaction of the debt owed to Sharp. The invoice documents relating to this transaction are dated February 21, 1989. Particular pieces of lumber were selected and valued. The value was slightly in excess of the debt owed. Accordingly, Sharp delivered to the debtor a check in the amount of $2,286.41 in payment of the excess value of the lumber.

In March 1989, David Robertson and Ray Sharp spoke regarding the remainder of the lumber stored at Sharp. It was agreed between David Robertson and Ray Sharp that Sharp would sell the remaining lumber stored at the Sharp premises on the following terms: (1) Sharp would redry the lumber as necessary and deduct its fee for the redrying from the sale proceeds; (2) Sharp would deduct its fee for inspecting and separating the lumber from the sale proceeds; (3) Sharp would deduct a storage fee from the sale proceeds; and (4) Sharp would deduct a sales commission from the proceeds.[2] The lumber was not in fact sold

1. While the trustee asserts that the value of the lumber was $112,268.57, the evidence was uncontroverted that the value of the lumber was less than the book value due its grade and the fact that it had been stored for so long.

2. There was no indication that the rates charged for any of these items was unreasonable or not customary in the industry.

David Robertson, whose testimony was presented by deposition, was unable to recall with great specificity the terms of the agreement. His general recollection does not contradict the testimony of Ray Sharp regarding the terms of the agreement.

until sometime in June 1989. The involuntary chapter 7 petition in bankruptcy was filed on June 30, 1989.

The trustee seeks turnover of the value of the lumber transferred to Sharp and to obtain the proceeds of the lumber sold by Sharp. The trustee asserts that a fraudulent transfer under 11 U.S.C. § 548(a)(2), and/or a preference under 11 U.S.C. § 547 occurred.[3] Sharp asserts that there are no remaining funds to turn over to the trustee. After deduction of his valid fees in preservation, storage, and sale of the lumber, protected by a statutory lien, there are no proceeds to remit.

In order to properly analyze the causes of action under the trustee's two theories of recovery, it is necessary to separate the two different transactions or transfers at issue. The first transaction is the sale of lumber to Sharp in February 1989, in liquidation of Townsend–Robertson's debt to Sharp, in which title to lumber was transferred to Sharp ("the title transaction"). The second transaction is the agreement between Townsend–Robertson and Sharp for Sharp to sell the remaining lumber ("the commission transaction"). Sharp does not contend that it is entitled to proceeds of the sale in excess of its fees; it contends that its fees consumed the proceeds.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(E).

**3.** The complaint also alleged that post-petition transfers occurred. 11 U.S.C. § 549. The trustee asserts that Sharp sold the Townsend–Robertson inventory between June and August 1989, without remitting these proceeds to the debtor or trustee. The evidence presented, however, indicates that all sales occurred between March 6, 1989, and June 1, 1990. Inasmuch as the bankruptcy petition was not filed until June 30, 1990, section 549 is inapplicable.

**4.** Section 548 states in relevant part:
The trustee may avoid any transfer of an interest of the debtor in property, or any

*Fraudulent Transfer: Section 548(a)(2)*

■ First, the trustee asserts that a transfer of an interest of Townsend–Robertson to Sharp was made within one year before the date of the bankruptcy, by which Townsend received less than reasonably equivalent value, such that the transfer must be avoided pursuant to Bankruptcy Code section 548(a)(2).[4] There is no real dispute that a "transfer" occurred within the meaning of the Bankruptcy Code. The primary issue is whether the debtor received "reasonably equivalent value" in the exchange.

The Eighth Circuit Court of appeals addressed the meaning of "reasonably equivalent value" in *In re Ozark Restaurant Equipment Co., Inc.*, 850 F.2d 342 (8th Cir.1988):

> The concept of reasonably equivalent value is a means of determining if the debtor received a fair exchange in the market place for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property.

*Id.* at 344–45.

The Court finds that reasonably equivalent value exists with respect to the title transaction. The transfer of the lumber in February 1989 in satisfaction of the debt was an arms-length transaction. The uncontroverted evidence was that the value of the lumber was slightly in excess of the debt. In order to ensure a fair exchange, Sharp remitted $2,286.41 to Townsend–Robertson as payment for the excess value of the lumber. Accordingly, the trustee is not entitled to recover the value of the

obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. * * * *

11 U.S.C. § 548(a)(2).

**410**

lumber related to the title transaction under section 548(a)(2).

■ The Court finds that the drying, inspection, separation, and commission charges also constitute reasonably equivalent value. The uncontroverted evidence demonstrated that reasonable amounts were charged and represented customary fees. The Court does not agree, however, that the storage charges are appropriate in this case. The evidence presented by both parties indicated that in the normal course of business between the debtor and Sharp, Sharp did not charge storage costs to the debtor. Accordingly, the Court will not permit Sharp to charge storage costs for lumber stored prior to the March 22, 1989, date when Ray Sharp and David Robertson entered into an agreement allowing Sharp to liquidate the remaining lumber inventory. The evidence indicated that the storage costs were a term of the agreement between David Robertson and Sharp. Accordingly, the Court will allow the reasonable storage costs from March 22, 1989, for a reasonable period of time. Of course, any claim for storage costs for the portion of the lumber, title to which was transferred to Sharp, are not merited.

■ Sharp's pending claims for storage costs do not cover a reasonable period of time. Sharp was not in the business of buying and selling lumber, although he believed he could find a buyer within a reasonable period of time. The motives of Ray Sharp in agreeing to sell the lumber were mixed. In addition to assisting the family of a friend, Ray Sharp wished to assist his own son in establishing a lumber business. It was Sharp's intent to have his son find a buyer for the lumber and thus get started in the business, which motivated his agreement to sell the lumber.

The son did not sell the lumber. Ray Sharp ultimately had to sell the lumber himself. The lumber need not have been stored, at the debtor's expense, during the time Ray Sharp was trying to assist his son's efforts to learn the lumber-selling business. Such storage costs do not constitute reasonably equivalent value. Accordingly, storage costs in excess of three months will not be permitted. The Court will allow storage costs from March 22, 1989, to June 22, 1989.

The evidence demonstrated that Sharp received gross sale proceeds of $57,053.39,[5] against which the following charges were made:

| | |
|---|---|
| Commission (10%): | $ 5,705.34 |
| Inspection/Drying: | 25,195.76 |
| Total: | $30,901.10 |

Accordingly, before storage charges, the trustee would be entitled to recover $26,152.29. The Court will allow storage charges for a three month period at Sharp's usual rate, as reflected in defense exhibits 2 and 3. Accordingly, Sharp is entitled to storage costs in the amount of $2,762.56. The total charges constituting "reasonably equivalent value" are $33,663.66. The trustee's portion of the sale proceeds is thus $23,389.73.

*Preferential Transfer: Section 547*

■ The Trustee's second assertion is that a preferential transfer occurred with respect to the lumber sold by Sharp for Townsend–Robertson. A preferential transfer exists when a transfer is made:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—(A) on or within 90 days before the date of the filing of the petition * * *; and

(5) that enables such creditor to receive more than such creditor would receive if—(a) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). It is uncontroverted that the title transaction, the sale of lum-

---

5. Gross sale proceeds for sale of all of the lumber was $83,017.14. However, Sharp is not enti-tled to fees on lumber to which it held title.

ber to Sharp in February 1989, occurred more than 90 days before the date of the petition. Accordingly, the trustee may not recover as a preference any of the $36,765 value received by Sharp.

■ The second transaction, the retention of reasonable fees by Sharp is also not a preference. Sharp and Robertson agreed that Sharp would sell the lumber stored at his premises, in exchange for which Sharp would retain a commission and other fees associated with readying the lumber for market. In this manner, the fees constituted new value contemporaneously exchanged for the services in selling the lumber. As a factual matter, the elements of intent, contemporaneous exchange and new value exist such that, to the extent the charges were reasonable, the fees are not a preference.[6] *See generally Tyler v. Swiss American Securities, Inc. (In re Lewellyn & Co., Inc.)*, 929 F.2d 424 (8th Cir.1991).

Further, the retention by Sharp of the fees related to selling the lumber was not on account of an antecedent debt. After February 21, 1989, there was no debt to Sharp. The charges made by Sharp with respect to this transaction were proper charges for work performed in grading, drying and selling the lumber. The debt arose by virtue of the services performed in disposing of the lumber; it was not a debt previously owed by Townsend–Robertson to Sharp. *See Ross v. Francis*, 72 F.2d 358, 359 (2d Cir.1934) ("Since he took the collections into his possession immediately as they came in, there was no period when the company owed him an unsecured debt and no security was taken upon such a debt with knowledge of the debtor's insolvency. A preference pre-supposes some credit given....").

ORDERED that the trustee is entitled to judgment in the amount of $23,389.73 pursuant to 11 U.S.C. §§ 547, 548.

IT IS SO ORDERED.

---

6. Of course, to the extent the fees are not reasonable, there is no exchange for value. The Court has previously discussed the extent to which the charges were not merited.